OPINION of the Court, by
Judge Boyle.
— -This appeal was taken from the judgment of the circuit court of Montgomery, in an action of trespass assault and battery, and false imprisonment, brought by the ap-pellees against the appellant for the purpose of ascertaining their right to freedom. The appellant pleaded, in justification, that the appellees were slaves, and his property by the laws of the land ; to which they replied by asserting their freedom. On the trial of the issue thus made up between the parties, a verdict was found for the appellees. The appellant, on the ground that the verdict was contrary to evidence, moved the court to set it aside and grant a new trial, but the court overruled his motion, to which opinion of the court he excepted.
The evidence in the cause, as appears from the bill of exceptions made a part of the record, was to the following effect:
That the appellant being a resident of the state of Virginia, and holding the appellees as slaves under the laws of that state, in October or November of the year 1780, left his residence with the view and intention of removing to and settling his family in Kentucky ; that when he arrived at Cross creek, six miles from the Ohio, *426 he found the difficulty of passing down the river s'ó great, and the danger from the savage foe so imminent, that self preservation induced him to halt until he could descend the river with more safety; that in the spring of the year 1781, the inhabitants in the vicinity of Cross creek were much alarmed from the Indians, and some of them, who stayed, forted for their mutual safety and protection ; that the appellant, with his family and servants, moved eastward to a place called Shirtee, about two and a half miles from Catfish, (now Washington,) where he rented land and lived until the fall of the year 1783, when he descended the Ohio, and came to this country with his family and servants, where he has ever since resided ; that during his stay at Shirtee, he always manifested his intention of proceeding to Kentucky as soon as possible, without hazarding the lives of his family and servants ; that the place where he lived was in the territory claimed both by Virginia and Pennsylvania ; that the officers of both states exercised jurisdiction therein, and that great public commotion was produced and existed amongst the people ; that the conflicting claims to jurisdiction were not adjusted, and the boundary line settled, until the year 1784; and that, according to the line as settled between the two states, the place where the appellant had resided is several miles within the state of Pennsylvania»
This state of the case presents a phenomenon which it is believed has rarely occurred in the history of nations. That different states or nations have at the same time claimed the empire of one and the same territory, is a circumstance that has not unfrequentlv happened. But no instance has been found, in the researches the court have had an opportunity of making, where both nations have been at the same time in possession of the territory in dispute, as was the case of Pennsylvania and Vir-» ginia with respect to the territory in which the appellant resided from the spring of the year 1781 until the fall of the year 1783.
By what laws the conduct of the inhabitants of the disputed territory, thus simultaneously possessed by the citizens and officers of two governments having conflicting claims to the sovereignty, ought to be regulated and their rights to be decided, it is important in this case to ascertain. If the laws of Pennsylvania are to furnish *427 the rule of decision in the present controversy, then it is clear that the appellees are entitled to their freedom ; but, on the other hand, if the laws of Virginia are to be considered as furnishing the proper rules of decision, it is equally dear that the appellees must be deemed slaves.
In the tribunals of those states, during the existence of the dispute, we would naturally expect to find the rights of the inhabitants decided upon according to the laws of that state to which the tribunal might belong, without regard to those of the state of which the inhabitants might respectively claim to be citizens. But what would have been the rule of decision in a question where the lex loci ought to govern, if such a question had been made with respect to the rights of an inhabitant of the disputed territory before a court of another state, it is not so easy to determine. It seems most agreeable to the dictates of natural justice, as well as of sound policy, that the conduct of the inhabitants during the existence of the dispute should have been regulated, and of course ought always to be decided according to the laws of the state of which they were respectively citizens; that is to say, the conduct of those claiming to be citizens of Pennsylvania according to the laws of Pennsylvania, and the conduct of those claiming to be citizens of Virginia according to the laws oí Virginia.
A private citizen must be supposed to be incompetent to decide which of the two states had the right of empire. He was bound to render obedience to the laws of the government whose citizen he was, and it is consonant to every principle of justice and policy, that he should have the benefit of the protection of those laws which he was bound to obey. The appellant, in the present case, was a citizen of Virginia, on his way from one undisputed part to another undisputed part of the territory of that state ; for the safety of his family from the savage enemy, he took up a temporary residence in. the country claimed both by Virginia and Pennsylvania, from whence he removed prior to the final settlement of the boundary line, and while its adjustment was hi fieri between the two states. Under these circumstances, we can have but little hesitation in declaring that he was bound to obey the laws of Virginia, and, in his turn, was entitled to the benefit of their protection. It seems, *428 therefore, the evidence in this case does not warrant .-.udinf* of la jury, and that a new trial ought to l ■ w been granted. The opinion of the court on this pc -t being in favor of the appellant, and the other errors assigned by him not being entitled to weight, it is unnecessary to give them a particular examination,
Judgment reversed.